**OKLAHOMA HUMAN RIGHTS COMMIS-
SION, Appellant,**

v.

**HOTIE, INC., d/b/a The Onyx Club,
Appellee.**

**No. 44684.**

Supreme Court of Oklahoma.

Jan. 23, 1973.

Larry Derryberry, Atty. Gen., Larry L. French, Asst. Atty. Gen., James A. Mitchell, Human Rights Commission, Oklahoma City, for appellant.

Carroll E. Gregg, Turner, Gregg & Turner, Oklahoma City, for appellee.

LAVENDER, Justice:

A complaint was filed with the Oklahoma Human Rights Commission to the effect that the Onyx Club of Oklahoma City had engaged in discriminatory practice in that it had denied complainant equal access to the club because of complainant's color. The complaint was made and the subsequent proceedings through the district court were conducted pursuant to what is now 25 O.S.1971, § 1101 through § 1802.

The appeal here is from an order of the District Court of Oklahoma County in a proceeding under the statute (Section 1506) for the enforcement of an order of the Commission, wherein that court determined that neither the Commission nor it had the authority to in effect declare the Onyx Club a place of public accommodation and to thereby destroy its status as a "private club" as it was licensed to be by the City of Oklahoma City. The problem resolves itself into whether or not, assuming there is a conflict between the state statute requiring non-discrimination in admitting persons to places which are, in fact, "places of public accomodation" (Sec. 1401, infra), such conflict means that the state statute must give way to the city ordinance because the regulation of private clubs is a matter of purely local concern.

The civil rights proceeding before the Commission, under Sections 1501 through 1505, involved an alleged "discriminatory practice" mentioned in Section 1402:

"It is a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accomodations of a 'place of public accomodation' because of race, color, religion, or national origin."

In connection therewith, Section 1401 provides that, as used in the act:

"(1) 'place of public accommodation' includes any place, store or other establishment, either licensed or unlicensed, which supplies goods or services to the general public or which solicits or accepts the patronage or trade of the general public or which is supported directly or indirectly by government funds: except that

(i) a private club is not a place of public accomodation, if its policies are determined by its members *and* its facilities or services are available only to its members and their bona fide guests." (Emphasis supplied)

Incidentally, as used in the act, the term "person" (appearing in Section 1402) is broad enough to include every legal, commercial, and governmental entity.

The district court order in question sustained a motion by the respondent, Hotie, Inc., doing business as the Onyx Club, for summary judgment in its favor.

Consequently, this court is required to review the matter in the light of Rule 13 of its rules for the district courts of the state. Insofar as pertinent herein, that rule provides that a party may move for judgment in his favor where the depositions, admissions, answers to interrogatories on file show that there is no substantial controversy as to any material fact; that the adverse party may file affidavits or other materials "in opposition to the motion;" and that:

"* * * The court shall render judgment if it appears that there is no substantial controversy as to any material fact *and* that a party is entitled to judgment as a matter of law. * * *." (Emphasis supplied)

When the motion for summary judgment was filed in the present instance, no depositions, admissions of fact, answers to interrogatories, or affidavits were on file and, thereafter, no affidavits or other materials were filed in opposition to the motion for summary judgment. At the time of the hearing on the motion, the respondent had not filed an answer to the Commission's petition, or amended petition, for enforcement of its order by the district court.

As the basis for its cease and desist order (and incidental order for affirmative action to be taken by the respondent, as provided in Section 1505), the Commission had found and concluded that, as shown by the evidence before it, the Onyx Club was not a private club the policies of which were determined by the members of the club and the facilities or services of which were available only to the members of the club and their bona fide guests, but was, in fact, a "place of public accomodation" within the meaning of that term as defined in Section 1401, and, solely because of the complainant's race or color, had, on the date alleged in the complaint, denied her full and equal enjoyment of the club's facilities or services, in violation of Section 1402.

In its motion for summary judgment in its favor, the respondent contends that the order of the Commission is void, and therefore not subject to enforcement by the district court, because the Onyx Club was not subject to the jurisdiction and superintending control of the Commission in a proceeding involving Section 1402. In support of that contention, the respondent advanced two theories.

Under one theory, the respondent alleged, in substance, that the Onyx Club was, in fact, a private club the policies of which were determined by its members and the facilities or services of which were available only to its members and their bona fide guests, and, therefore, was not a "place of public accomodation" subject to the provisions of Section 1402.

The Commission apparently does not admit that the Onyx Club was, in fact, a private club, or that the Onyx Club was not, in fact, a "place of public accomodation" as that term is defined in Section 1401. Its findings of fact and conclusions of law were exactly to the contrary of those alle-

gations by the respondent. Consequently, the respondent's motion for summary judgment in its favor could not, properly, be sustained on that theory.

Under its other theory, the respondent alleged, in substance, that, at the time involved in the complaint, the Onyx Club was a "private club" within the meaning of that term as used in the ordinance of the City of Oklahoma City providing for the regulation and licensing of "private clubs," defined therein as follows:

"For the purpose of this Ordinance a private club is defined as any association, person, firm or corporation, key club, bottle club, locker club, pool club, or any other kind of club or association, excluding the general public from its premises or place of meeting or congregating or operating or exercising control over any place where persons are permitted to drink alcoholic beverages other than in a private home;"

that, at the time in question, the Onyx Club was duly licensed as such a "private club" under that ordinance; and that all conditions for membership in a "private club" are prescribed in that ordinance, as follows:

"Membership in any private club subject to this Ordinance shall be regulated by Articles or By-laws. The Articles or By-laws of every Class 'C' private club shall provide that after application for membership at least one week shall elapse before the applicant shall be eligible for election to membership. Upon election to membership in any private club, a membership card shall be issued to a member and his name enrolled on a list of members, which shall be kept on the premises of every private club and be subject to inspection at all times. * * *."

Under this second theory, the motion for summary judgment also alleged, in substance, that the regulation and licensing of private clubs, including the prescribing of conditions for membership therein, are matters of purely municipal concern, so that, as a matter of law, the provisions of the above-mentioned ordinance concerning those matters would prevail over any state statute in conflict therewith; that, on the date in question, the complainant was not a member, or a bona fide guest of a member, of the Onyx Club, so admitting her to the premises would have been a violation of the ordinance and the club's license as a private club; that to order her admission to membership in the club would require a violation of the ordinance and the club's license as a private club; and that the Commission and the district court are without jurisdiction or authority to, in effect, supersede the pleaded city ordinance by ordering the respondent, as the holder of such a license, to open membership in the club and/or the availability of its services or facilities to the general public.

The trial court adjudged the Commission's order void and, therefore, not subject to enforcement by the court, and sustained the respondent's motion for summary judgment in its favor.

In doing so, the court made findings of fact and conclusions of law in harmony with, although not in as great detail as, the respondent's allegations and conclusions under its last-mentioned theory. The trial court's order cannot be sustained on that theory.

Obviously, the matter of any entity's denying any individual, because of his or her race, color, religion, or national origin, the equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations, of any place, store, or other establishment, which supplies goods or services to the general public, or which solicits or accepts the patronage or trade of the general public, whether or not such entity is licensed by the state or any other governmental entity or agency—the subject-matter of Section 1402—is not a matter of purely municipal concern.

Furthermore, there is no conflict between the provisions of the city ordinance pleaded by the respondent and the state statutes involved herein. The same

subject-matter is not involved. Those statutes do not—as argued by the respondent and found by the trial court—have the effect of requiring a private club, the policies of which are *in fact* determined by the members of the club *and* the facilities or services of which are *in fact* available only to members of the club and their bona fide guests, to open membership in the club and/or the availability of the club's facilities or services to the general public. Clearly, under those statutes, such a club is not a "place of public accomodation," as that term is used in Section 1402, supra, and would not be affected by its provisions.

■ Consequently, even assuming the truth of the respondent's allegation, in its motion for summary judgment in its favor, that the Onyx Club was, on the date involved in the complaint before the Commission, the holder of a license as a private club issued under authority of Oklahoma City's "private club" ordinance—an allegation not mentioned in the Commission's written order or admitted in its petition or amended petition for enforcement of the order—the general principles of law with respect to matters of purely municipal concern would have no application to the situation involved herein.

The trial court erred in sustaining the respondent's motion for summary judgment in its favor.

■ Because of some statements included in the trial court's journal entry of its order, and because the cause must be remanded for further proceedings, we point out that the mere holding of a license as a private club under Oklahoma City's "private club" ordinance (if the respondent, in fact, held such a license) does not establish that the licensee is a club the policies of which are, in fact, determined by the members of the club, or is a club the facilities or services of which are, in fact, available only to members of the club and their bona fide guests, or establish that the licensed place is not, in fact, a "place of public ac-

comodation" as that term is defined in Section 1401.

The order appealed from is reversed and the cause remanded to the trial court with directions to proceed in harmony with the views expressed herein and the provisions of 25 O.S.1971 § 1506.

All of the Justices concur.